IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DWIGHT V. HANSEL,

Plaintiff,

    v.

PRAIRIE INDUSTRIES, INC.,

Defendant.

OPINION & ORDER

13-cv-764-jdp

---

This is an age discrimination case. Plaintiff Dwight Hansel was one of eight maintenance technicians at Prairie Industries, Inc., a retail packaging and display company located in Prairie du Chien, Wisconsin. Prairie Industries's business dropped off precipitously in 2011, and Hansel was among the many workers laid off in two rounds of reductions in force. The layoffs were clearly motivated by the severe loss of business, but Hansel, at 60, was the oldest of the eight maintenance technicians, and the only one of them to be let go. Hansel contends that Prairie Industries used the layoffs as an excuse to keep younger, but less qualified, employees. He brings this case under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*.

Before the court is Prairie Industries's motion for summary judgment. Dkt. 10. Hansel has stated a prima facie case of age discrimination, but Prairie Industries has provided a non-discriminatory explanation for why it selected Hansel as the sole technician to be terminated. In response, Hansel has failed to adduce evidence sufficient to allow a reasonable jury to find that the company's explanation was a pretext for age discrimination. The court will grant Prairie Industries's motion for summary judgment.

UNDISPUTED FACTS

The court finds that the following facts are material and, except where noted, undisputed.

Prairie Industries specializes in retail packaging, liquid filling, and display building. The company operates two plants in Prairie du Chien, Wisconsin: the "North Plant" and the "South Plant." The North Plant houses most of Prairie Industries's blister packaging and clamshell packaging operations.[1] Also at the North Plant are the shrink-wrapping, bagging, and die-cutting machinery and operations. The South Plant has Prairie Industries's liquid-filling and display-building operations. Before the layoffs, the South Plant also housed two additional blister packaging machines. In 2011, Prairie Industries's largest customer was 3M. The work was somewhat seasonal, and its peak production season was during the summer.

Prairie Industries hired Hansel as a maintenance technician in June 2006. He was 54 years old at the time. Hansel spent only the first four days of his employment working at the North Plant. Shortly after he started, he helped set up operations at the South Plant and then permanently transferred to that location. His duties included maintaining and repairing the machines at the South Plant, as well as providing general building and HVAC maintenance. Hansel's formal title was simply "maintenance technician," like the others, but he worked as a "lead" during his employment. In this capacity, Hansel was responsible for ordering parts, handling inventory, and testing equipment.

Based on projected orders for its summer 2011 peak season, Prairie Industries hired 80 temporary workers and 20 full-time employees. At the end of the peak season, Prairie Industries

---

[1] Blister packaging is a process that uses a machine to package a product between a plastic bubble and a piece of cardboard. Dkt. 11, at 2. Clamshell packaging uses a machine to package products by joining two halves of a plastic package with a hinge. *Id.*

let all 80 temporary workers go. But business declined more than anticipated and the company terminated 30 full-time employees as well—including some, but apparently not all, of the group of 20 that Prairie Industries hired in the summer of 2011. The full-time employees were laid off effective November 14, 2011, the first reduction in force at issue in this case.

Things got even worse. Demand for Prairie Industries's services continued to drop when 3M took much of its business elsewhere. Prairie Industries projected a $10 million loss in revenues and a 73% reduction in blister packaging because of the decline in business. Prairie Industries decided to consolidate its blister packaging operation and moved the two blister machines at the South Plant to the North Plant. Prairie Industries then determined that it could meet the reduced demand by running five blister machines at the North Plant over one shift instead of the two shifts it had been running. The company also cut expenses by cancelling its Christmas party and reducing holiday bonuses.

Consolidation and expense cutting were not enough, and Prairie Industries decided to lay off more employees. An e-mail from Jeff Panka, the company's president, confirms that Prairie Industries had begun planning a second reduction in force by November 11, 2011. Prairie Industries ultimately laid off another 38 employees, effective January 2012 (the January RIF), 16 of whom voluntarily left when offered severance packages. Hansel was among the workers involuntarily terminated and his employment officially ended on January 12, 2012.

At the time Hansel was terminated, Prairie Industries employed eight maintenance technicians; four at the North Plant and four at the South Plant. The table below lists the maintenance technicians and their ages:

| North Plant | | South Plant | |
|---|---|---|---|
| Tracy Christ | 48 | Barry Curran[2] | 46 |
| Daniel Paulus | 29 | Dwight Hansel | 60 |
| Dave Polodna | 40 | Stuart Stickfort | 55 |
| Shane Toberman | 54 | Kipp Toberman[3] | 35 |

Of the eight technicians, Hansel was the oldest and the third most senior. He was the only maintenance technician laid off as part of Prairie Industries's reduction in force.

Tina Stoeffler, the North Plant manager, and Tom Jazdzewski, the South Plant manager, reviewed all eight maintenance technicians as part of the January RIF. Jazdzewski determined that because the two blister machines at his plant would be moved to the North Plant, he could eliminate one of the maintenance technicians who worked at the South Plant. Eventually, Stoeffler and Jazdzewski narrowed the decision down to Hansel and Toberman because they felt that both technicians performed the same basic duties and that either could adequately serve as a lead technician. The managers ultimately retained Toberman because of his slightly higher performance evaluations, his ability to provide IT support to Prairie Industries, and his experience working at the North Plant.

The parties disagree on whether Toberman was acting as a lead technician as of November 2011, but any dispute on this point is immaterial because Stoeffler and Jazdzewski determined that Hansel and Toberman performed generally overlapping duties ("lead" or otherwise) and further believed that Toberman had the *ability* to perform all the lead tasks. On these latter two points, there is no genuine dispute. Hansel and Toberman both held the title of

---

[2] Barry Curran was transferred from the North Plant to the South Plant in December 2011, and was working there on the date Hansel's termination became effective.

[3] The court will refer to Kipp Toberman as "Toberman." Shane Toberman is not mentioned again in this opinion.

"maintenance technician" and performed the same basic duties. In terms of lead tasks, Hansel took responsibility for ordering parts, maintaining an inventory, and implementing various procedures. Jazdzewski testified at his deposition that Toberman would complete these tasks when Hansel was on vacation. Dkt. 19 (Jazdzewski Dep. 31:3-18). Hansel supervised the Humidipak machine, whereas Toberman monitored the Vertical Fill and quart line machines.

Hansel cannot genuinely dispute that Toberman had the ability to perform all the lead tasks, and that some factors favored retaining Toberman over him. At his deposition, Hansel stated that he and Toberman possessed many of the same skills and were capable of performing many of the same tasks, although he speculated that Toberman might require some additional training before being fully capable of taking charge over some machines at the South Plant. Dkt. 17 (Hansel Dep. 19:19-40:8). During the relevant time period, however, Toberman had slightly better performance reviews than Hansel. In 2010, Hansel was "proficient" in each of Prairie Industries's five evaluation categories except for safety, where he was marked as "needs improvement." Overall, he scored 27 out of 30. In 2011, Hansel was "proficient" in each category and scored 30 out of 30. In contrast, Toberman received perfect scores both years with no areas of concern. Stoeffler and Jazdzewski also considered that Toberman had worked at the North Plant for a substantial period of time before joining the South Plant and so he had greater experience with the North Plant's machines and operations.

The managers' final reason for retaining Toberman was their belief that he could provide IT support for Prairie Industries, in addition to completing his duties as a maintenance technician. As Hansel acknowledged in his deposition, Toberman had received formal, college-level training in computer science. *Id.* at 17:10-14. Stoeffler and Jazdzewski considered this additional qualification to be particularly valuable because it would enable Prairie Industries to reduce some of its outsourced IT costs.

5

On July 31, 2012, Hansel filed a charge of age discrimination with the Wisconsin Department of Workforce Development, Employee Rights Division (ERD), and the Equal Employment Opportunity Commission (EEOC). The ERD investigated the charge and returned a finding of probable cause that discrimination had occurred. In addition to relying on Hansel's age and seniority, the ERD based its probable cause determination on the fact that "Hansel has ISO certification as a Maintenance Technician and as Maintenance Lead as well as seven other jobs at Prairie [Industries]. At the time Hansel was terminated, Toberman and [] Curran [] were not ISO certified." Dkt. 15-8, at 2. The ERD's factual finding was incorrect, however, because Hansel is not *personally* ISO certified—Prairie Industries is, as a facility. The ERD scheduled a hearing on Hansel's charge, but he requested a stay of those proceedings and sought a right-to-sue letter from the EEOC. When he received the letter, Hansel brought suit in this court.

This court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under federal law, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq.*

ANALYSIS

**A.  Standard of review**

Summary judgment is appropriate if the moving party, here Prairie Industries, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, Hansel "must set forth specific facts showing that there is a genuine issue for trial." *Id.* He may not simply rely on the allegations in his pleadings to create such a dispute, but must

6

"demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [his] favor." *Johnson v. City of Fort Wayne, Ind.*, 91 F.3d 922, 931 (7th Cir. 1996).

Prairie Industries contends that Hansel cannot create a genuine dispute of fact on the question of whether he was terminated because of his age. The company argues that it has provided legitimate, non-discriminatory reasons for its termination decision and that Hansel has failed to identify evidence in the record that would enable a jury to find Prairie Industries's proffered reasons to be false. Hansel disagrees, first arguing that he has identified several similarly situated employees for whom Prairie Industries has not given legitimate, non-discriminatory reasons for retaining over him. He further asserts that he *has* produced evidence from which a jury could conclude that Prairie Industries's true motive for terminating him was discriminatory. Hansel's argument is unpersuasive because none of the evidence he cites actually refutes Prairie Industries's proffered reasons for retaining other employees. The court therefore concludes that Prairie Industries is entitled to judgment as a matter of law.[4]

## B.  Hansel's age discrimination claim

The ADEA prohibits employers from discriminating against their employees on the basis of age. 29 U.S.C. §§ 623(a)(1), 631(a). To prove discrimination under the ADEA, Hansel must establish that Prairie Industries subjected him to an adverse employment action because of his age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009) ("[P]laintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."). Hansel may proceed under the "direct" or "indirect" method of proof, but "[i]n either case, the

---

[4] Prairie Industries has also asked the court, in the alternative, to dismiss Hansel's claim for liquidated damages under 29 U.S.C. § 626(b). Hansel opposes the request. Because the court will grant the motion for summary judgment, it need not address this issue.

bottom-line question is whether the plaintiff has proved intentional discrimination." *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009). Here, Hansel uses the indirect method to prove his claim, *see* Dkt. 31, at 5, which means that his case must go through the Supreme Court's burden-shifting framework. *See Martino*, 574 F.3d at 452 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

The first step in this framework is for Hansel to make out a prima facie case of age discrimination. If he does, the burden shifts to Prairie Industries to articulate a legitimate, non-discriminatory reason for terminating Hansel. Assuming the company provides such a reason, Hansel must produce evidence from which a reasonable jury could find that Prairie Industries's reason is pretextual. *See id.* at 453. The court concludes that Hansel has stated a prima facie case, and that Prairie Industries has responded with legitimate, non-discriminatory reasons for retaining each similarly situated employee that Hansel identifies. Hansel has not, however, adduced evidence sufficient to support a finding of pretext.

### 1.  Hansel's prima facie case

This case involves a reduction in force (RIF) and the elements of Hansel's prima facie case are therefore slightly modified from the traditional *McDonnell-Douglas* framework. In an ADEA case involving a RIF, a plaintiff must show that: "(1) he is a member of a protected class; (2) he reasonably performed his job to his employer's expectations; (3) he was subject to an adverse employment action; and (4) other similarly situated employees who were substantially younger than him were treated more favorably." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000).[5] Prairie Industries initially conceded that Hansel could show each of these

---

[5] There is a difference between a true RIF and what the court of appeals has termed a "mini-RIF," and the fourth prima facie element is less onerous for the latter. *See Michas v. Health Cost*

elements, Dkt. 11, at 15, but later clarified that he could only do so by using Toberman as a similarly situated and substantially younger employee, Dkt. 37, at 4-5. Hansel disagrees and argues that in addition to Toberman, the court should consider Curran, Christ, Paulus, and Polodna to be valid comparators.

Hansel has carried his burden of proving that these four additional maintenance technicians were "similarly situated" and "substantially younger." To identify "similarly situated" employees, the court uses "a flexible, common-sense examination of all relevant factors. . . . Similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way. We are looking for comparators, not clones." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (internal citations and quotation marks omitted). Although the factors relevant to the comparator inquiry vary, a plaintiff in a RIF case must usually "show at a minimum that the retained or transferred younger employees possessed analogous attributes, experience, education, and qualifications relevant to the positions sought." *Radue*, 219 F.3d at 618. Whatever factors a plaintiff identifies, he bears the burden of showing that the proposed comparators are similarly situated. *Id.*

Hansel states that the North Plant technicians (including Curran, who had been a North Plant technician until just before the January RIF) "held the same position . . . the position required essentially the same skills and qualifications to perform and they were all being reviewed for layoff by the same decision-makers, Jazdzewski and Stoeffler." Dkt. 31, at 6. Prairie

---

*Controls of Ill., Inc.*, 209 F.3d 687, 693 (7th Cir. 2000). In mini-RIF cases, the Seventh Circuit has "dispensed with the requirement [of] 'similarly situated' employees who were treated more favorably [and] only require[s] that a plaintiff demonstrate that his duties were absorbed by employees who were not members of the protected class." *Id.* On its face, this case appears to qualify as a mini-RIF because Toberman essentially took over Hansel's duties. Even though Hansel did not frame his case as a mini-RIF, there is sufficient evidence to state a prima facie case of discrimination under either type.

Industries contends that the North Plant technicians are not proper comparators because they serviced different machines and had a different supervisor than Hansel. Prairie Industries emphasizes that the North Plant technicians were never in the pool of employees being considered for termination because Stoeffler and Jazdzewski decided from the outset that they would lay off a technician from the South Plant. Dkt. 37, at 2-3. But Prairie Industries's own submissions in this case undermine its position. For example, Prairie Industries used the same job description for each of its maintenance technicians and the company's human resources manager explained that the purpose of the description was to ensure that each technician was competent to perform a minimum set of duties. Dkt. 25 (Greene Dep. 32:20-33:16).[6] Moreover, Prairie Industries admitted that Stoeffler and Jazdzewski reviewed *all eight* maintenance technicians in making their layoff decision. Dkt. 38, at 5. At about the same time they decided to terminate Hansel, the managers transferred Curran to the South Plant "as part of Prairie's effort to restructure its workforce," *id.* at 7, so the placement and retention of the North Plant technicians was obviously part of Stoeffler and Jazdzewski's decision-making process. The court concludes that the four North Plant technicians Hansel identifies were sufficiently similarly situated to him to serve as appropriate comparators (although the fact that the North Plant technicians had greater experience with North Plant machines will come back as part of Prairie Industries's non-discriminatory explanation for Hansel's termination).

Hansel's proposed comparators also qualify as "substantially younger" because they were at least 10 years younger than Hansel when Prairie Industries terminated him. *See Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1118 (7th Cir. 2009) ("We have described substantially

---

[6] The record contains signed job descriptions from only the South Plant technicians. Given that Hansel is entitled to all reasonable inferences at this point in the case, and given that Prairie Industries does not argue to the contrary, the court assumes that the North Plant technicians signed the same forms.

younger as generally ten years younger.") (internal citations and quotation marks omitted). Prairie Industries does not dispute that Curran, Christ, Paulus, and Polodna meet this definition.

Prairie Industries's maintenance technicians may not have been exactly identical, but "[i]t is important not to lose sight of the common-sense aspect of this inquiry." *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2007) *aff'd*, 553 U.S. 442 (2008). Prairie Industries's technical distinctions notwithstanding, this case is about a company that employed eight maintenance technicians and then terminated the oldest one. The retained technicians— five of whom were substantially younger—were similar enough to "allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* Hansel has shown a prima facie case of age discrimination based on Prairie Industries's more favorable treatment of Toberman, Curran, Christ, Paulus, and Polodna.

### 2. Prairie Industries's non-discriminatory reasons

To rebut the presumption of age discrimination, Prairie Industries argues that it terminated Hansel for economic reasons, as part of a RIF. The burden to articulate an explanation for a termination decision is not onerous, and the court will accept a reason if, on its face, the reason appears to be legitimate and non-discriminatory. *See Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 920 (7th Cir. 1996). A RIF can provide the foundation for a legitimate, non-discriminatory reason, but the company must go further and explain why it included Hansel in the large-scale layoff. *See Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1014 (7th Cir. 2000). Prairie Industries has satisfied this requirement by describing why it retained each of Hansel's proposed comparators.

Since Hansel filed his original charge of discrimination with the ERD and the EEOC, he has based his prima facie case on two comparators, contending that Toberman and Curran received better treatment than he did. Indeed, at his deposition, Hansel testified that it was Prairie Industries's decision to retain these two employees over him that led Hansel to believe that his termination was because of his age. Dkt. 17 (Hansel Dep. 62:16-63:4). Prairie Industries accordingly focused its opening brief on discussing its legitimate, non-discriminatory reasons for retaining Toberman and Curran. In response, Hansel identified three more North Plant technicians as additional comparators and argued that Prairie Industries could not be entitled to summary judgment because it had not offered non-discriminatory reasons for retaining them over him.

Prairie Industries was faced with a 73% decline in production following the loss of its largest customer and, after trimming its costs, decided to reduce its workforce. Once Stoeffler and Jazdzewski realized that they would need to lay off employees, they evaluated their anticipated production schedules and corresponding staffing needs. By relocating two machines from the South Plant to the North Plant, the managers determined that they could handle their anticipated volume of business and be able to eliminate one of the technicians at the South Plant. This preliminary determination removed the North Plant technicians from consideration, and that was a legitimate business decision. *See Radue*, 219 F.3d at 615 ("[T]he ADEA does not require [an] employer to terminate younger employees in order to open positions for older workers."). Thus, Prairie Industries has met its burden of articulating a reason for retaining the four substantially younger North Plant technicians—Curran, Christ, Paulus, and Polodna.[7]

---

[7] Because he transferred to the South Plant just before the January RIF, Prairie Industries offers additional reasons for retaining Curran. Specifically, Stoeffler and Jazdzewski determined that Curran could flex between first shift at the South Plant and second shift at the North Plant (the shift he had been working until the January RIF eliminated it), and that his lower wage would

After narrowing the termination decision to the South Plant technicians, Jazdzewski concluded that two of them—Hansel and Toberman—were performing overlapping duties that could be consolidated into one position. The managers chose to retain Toberman because he could provide IT support, received slightly higher reviews, and was more familiar with the North Plant's machines so he could transition to that location if business fluctuated. Hansel disputes whether Stoeffler and Jazdzewski were accurate in their evaluation of each technician, but the court concludes that Prairie Industries has produced a legitimate, non-discriminatory reason for retaining Toberman over Hansel.

### 3.  Pretext

Prairie Industries has offered legitimate, non-discriminatory reasons for its termination decision, and so Hansel must identify evidence in the record from which a reasonable jury could conclude that Prairie Industries's explanation is a mere pretext for discrimination, and that age was the real reason he was terminated. Although there are five similarly situated employees in this case, Hansel does not discuss why Prairie Industries's decision to keep three of the North Plant technicians was pretextual, focusing only on Toberman and Curran.[8] Hansel suggests that Prairie Industries has not offered any legitimate, non-discriminatory reasons for retaining the other North Plant technicians and does not further address them. Dkt. 31, at 8. But the court has already concluded that Prairie Industries *has* articulated such reasons and that its reasons were readily apparent in its opening brief. Hansel's failure to discuss any evidence of pretext in

---

be easier for Prairie Industries to absorb.

[8] The fourth South Plant maintenance technician, Stuart Stickfort is not at issue, presumably because, at 55, he is not substantially younger than Hansel. In addition, Stickfort's work was specialized to one machine, and thus Prairie Industries would have a legitimate non-discriminatory reason to retain him.

the decision to remove the North Plant technicians from consideration leaves the court to conclude that he has none. This case therefore turns on whether Hansel can identify evidence suggesting that Prairie Industries's decision to retain Toberman and Curran was pretextual.

Hansel's claim cannot survive summary judgment simply by challenging the wisdom or fairness of his termination. The Seventh Circuit has often explained that "[p]retext means a lie, specifically a phony reason for some action." *Collins v. Am. Red Cross*, 715 F.3d 994, 1000 (7th Cir. 2013). In the context of a RIF, "it is foreordained that some employees will lose their jobs" and this court does not sit as a super personnel department to review the wisdom or accuracy of an employer's termination decisions. *Testerman v. EDS Technical Prods. Corp.*, 98 F.3d 297, 303-04 (7th Cir. 1996); *see also Tincher v. Wal-Mart Stores, Inc.*, 118 F.3d 1125, 1130 (7th Cir. 1997) ("The pretext inquiry focuses on the honesty—not the accuracy—of the employer's stated reason for the termination."). "To show pretext in a RIF case, an employee must establish that an improper motive tipped the balance in favor of discharge or that the employer did not honestly believe in the reasons it gave for firing him." *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 574 (7th Cir. 2003) (internal citations and quotation marks omitted). Hansel must do more than simply disagree with the reasons Prairie Industries has offered for retaining other maintenance technicians. He must produce evidence tending to prove that Prairie Industries's proffered explanation is: (1) factually baseless; (2) not the actual motivation for his discharge; or (3) insufficient to motivate the discharge. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 323 (7th Cir. 2003).

### a.  Pretext with regard to Toberman

Prairie Industries has explained that Stoeffler and Jazdzewski decided to keep Toberman because Toberman was performing duties that overlapped with Hansel's, he was capable of

performing "lead" duties, he could provide IT support, and he had more familiarity with the North Plant's machines because he had more experience at that location before moving to the South Plant. To show that Prairie Industries's reasons for retaining Toberman were a pretext for discrimination, Hansel argues that the managers' decision has no basis in fact.

Hansel first asserts that he was the only technician to perform lead duties at the South Plant. Hansel directs the court to deposition testimony, affidavits, and training checklists that Prairie Industries used for its maintenance technicians, all of which confirm that he was responsible for ordering parts, maintaining an inventory, calibrating equipment, and implementing other procedures. But this is evidence that Hansel was a capable technician who performed lead duties, not that Stoeffler and Jazdzewski lacked any reason to believe that Toberman was also capable of serving as a lead or that he performed other lead tasks. It is not enough for Hansel to show that he was a better maintenance technician than Toberman. To survive summary judgment, Hansel must show that Stoeffler and Jazdzewski had no reason at all to think that Toberman could be a lead technician, because "pretext requires more than a showing that the business decision was mistaken, ill considered or foolish . . . so long as the employer honestly believed the reason given for the action, pretext has not been shown." *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 772 (7th Cir. 2002) (internal citations and quotation marks omitted). There is simply no evidence that Stoeffler and Jazdzewski did not honestly believe or lacked a factual basis for the reasons they gave for retaining Toberman over Hansel.

To the contrary, based on the information they had available, Stoeffler and Jazdzewski came to the reasonable conclusion that Toberman would be a satisfactory lead maintenance technician. *See Duncan v. Fleetwood Motor Homes of Ind., Inc.*, 518 F.3d 486, 492 (7th Cir. 2008) ("[T]he honesty of an employer's statement is often revealed by analyzing its reasonableness; the more objectively reasonable the explanation, the more likely it honestly motivated the

challenged employment action."). There is no genuine dispute that Toberman could and did perform some lead duties, and Hansel himself testified that he respected Toberman's skills as a technician and that Toberman would eventually be capable of performing all lead duties. Dkt. 17 (Hansel Dep. 64:4-25). Moreover, Hansel does not dispute that Toberman received higher performance reviews during the relevant time period, although he argues that his own reviews "were excellent overall" and that his skill as a technician makes it unlikely that his lower reviews motivated Stoeffler and Jazdzewski's decision. Hansel's evidence might support the assertion that Prairie Industries made the wrong decision, retaining the less talented technician. But Hansel cannot show that Stoeffler and Jazdzewski's choice was factually baseless.

Hansel next contends that Stoeffler and Jazdzewski could not have reasonably viewed Toberman's IT skills as grounds to retain him over Hansel because Toberman never performed IT tasks. In support, Hansel relies on his own impression of the IT projects Toberman completed as well as the depositions of two other Prairie Industries employees, both of whom acknowledged that they did not have complete knowledge of the extent to which Toberman performed IT functions. *See* Dkt. 22 (Curran Dep. 18:15-19) and Dkt. 24 (Gramlich Dep. 20:24-24:11). Hansel also observes that Prairie Industries typically contracted with third-party companies to address IT problems. Citing this evidence, Hansel argues that Toberman did not provide IT support to Prairie Industries and that the managers' conclusion to the contrary is pretextual. The problem with Hansel's argument, however, is that it misplaces the burden to identify evidence of pretext. It is not Prairie Industries's burden to affirmatively prove the truth of its legitimate, non-discriminatory reasons for retaining Toberman. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) ("This burden is one of production, not persuasion."). The observations of three employees without full knowledge of Toberman's IT duties are not evidence of pretext, and even if they were, Hansel entirely overlooks the undisputed fact that

16

Toberman had college-level training in computer science. This credential alone was a sufficient basis from which Stoeffler and Jazdzewski concluded that Toberman could provide IT support to Prairie Industries. At most, Hansel can show that he and two employees were not aware of Toberman performing more than a few isolated IT tasks. He cannot show, however, that Stoeffler and Jazdzewski lacked any basis for their evaluation of Toberman's IT experience.

Hansel tries to salvage his argument by noting that Prairie Industries's explanation for retaining Toberman has been inconsistent. In particular, Hansel directs the court to Prairie Industries's submission to the ERD in response to his charge of discrimination. Prairie Industries, through counsel, wrote that "Mr. Hansel's position was eliminated because there were currently two employees serving as lead maintenance workers, only one was needed, and his performance and skill set were weaker than the employee that was retained in this position." Dkt. 26-15, at 1. Prairie Industries also indicated that it retained Toberman because of his superior IT skills. *Id*. at 4. According to Hansel, Prairie Industries has now offered "shifting explanations" through Jazdzewski's acknowledgment that Toberman was only a lead in Hansel's absence and Prairie Industries's statement that Toberman was performing separate, additional lead duties for other machines. Hansel concludes that Prairie Industries's explanation has thus become "so vague on this important point that a jury could infer pretext from this fact alone." Dkt. 31, at 20 (citing *Hudson v. Lands' End Inc.*, 928 F. Supp. 2d 1045, 1059 (W.D. Wis. 2013)).

The court finds no meaningful shift in Prairie Industries's explanation. Prairie Industries has consistently maintained that its termination decision was between Hansel and Toberman, two employees with duties that could be collapsed into one position. Even construing the facts in Hansel's favor and concluding that Prairie Industries's reasons for retaining Toberman have not been word-for-word consistent, the company has repeatedly advanced the same explanation

17

"in substance if not word choice," and the mild discrepancy is not enough to allow a jury to find pretext. *Rand v. CF Indus., Inc.*, 42 F.3d 1139, 1146 (7th Cir. 1994). Hansel simply does not have evidence that Prairie Industries's reasons for retaining Toberman were false or that the company fired Hansel because of his age.

### b. Pretext with regard to Curran

Hansel also attempts to show that Prairie Industries's explanation for retaining Curran has no basis in fact. Hansel's first argument is that Prairie Industries lacked any factual support for its belief that Curran was both able and willing to "flex" between shifts. Hansel notes that Curran had only been working at the North Plant for four months before Prairie Industries transferred him to the South Plant as part of the first RIF. Hansel contends that he had some experience with the North Plant's machines and better knowledge of the South Plant's machines than Curran did. Further, Hansel states that he would have been willing to flex between shifts, but Stoeffler and Jazdzewski never asked him to do so before terminating him.

This argument largely overlooks Prairie Industries's point. Stoeffler and Jazdzewski believed that if the company's business recovered and it was able to reinitiate a second shift at the North Plant, Curran would be able to work that shift because he had already worked that shift at that plant. Hansel now asserts that he would have been willing to work the second shift too, but Hansel has no evidence that Stoeffler and Jazdzewski knew this or that their appraisal of Curran's flexibility was factually baseless. Accordingly, Hansel's assertion that he would have been willing to work other shifts is not evidence that tends to prove that Prairie Industries offered phony reasons for retaining Curran or that Hansel's age "tipped the balance" against him.

Hansel next argues that his experience, coupled with evidence of his considerable technical skills and knowledge, made him a superior candidate for retention compared to Curran. In fact, he claims that he was *so* superior that a jury could infer that the only reason Prairie Industries would not want to retain Hansel over Curran is because of his age. For support, Hansel directs the court to two decisions from the Tenth Circuit which hold that "[i]t is conceivable that a plaintiff could be so overwhelmingly better qualified than another applicant that on this evidence alone a trial court could properly find pretext." *Sanders v. Sw. Bell Tel., L.P.*, 544 F.3d 1101, 1106 (10th Cir. 2008) (quoting *Sanchez v. Philip Morris Inc.*, 992 F.2d 244, 247 (10th Cir. 1993)). Even if these cases were binding on this court, Hansel's reliance would be misplaced because he states only part of the applicable legal principle. To use the language of the Seventh Circuit, the full rule is that:

> *where an employer's proffered non-discriminatory reason for its employment decision is that it selected the most qualified candidate*, evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue.

*Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002) (emphasis added) (internal citations and quotation marks omitted). Here, Prairie Industries did not claim that it selected employees for retention based on who was "most qualified." Instead, the company eliminated employees with duplicative duties and retained those who could flex between shifts at the two plants and provide the broadest range of services. These criteria have little to do with an employee's "qualifications" for the position of maintenance technician.

Hansel contends that his qualifications are nevertheless relevant because Prairie Industries, through Stoeffler, has offered conflicting and inconsistent accounts of the criteria it used in deciding which employees to terminate. *See Harvey v. Office of Banks & Real Estate*, 377

F.3d 698, 712 (7th Cir. 2004) ("[N]othing in *Millbrook* forecloses a comparison of qualifications where the employer offers conflicting explanations for its employment decision."). But the record contradicts Hansel's assertion. In a November 2011 e-mail, Stoeffler proposed evaluating employees based on "attendance, occurrences, quality of work, speed of work, length of service, and flexibility to work in multiple production areas." Dkt. 26-5, at 2. Almost two years later, at her deposition, Stoeffler testified that her e-mail did not "get into specifics of the maintenance [technicians]," Dkt. 18 (Stoeffler Dep. 9:9-23), and she submitted an affidavit stating that she chose not to terminate Curran because he could flex between shifts and because his hourly wage was lower than Hansel's. Dkt. 13, ¶ 18. Neither of these later statements conflict or are inconsistent with Stoeffler's original e-mail. Although comparative pay rate was not explicitly among the criteria she listed in the e-mail, the entire purpose of the RIF was to reduce costs in response to a loss of business, and "any lack of precision in the articulated standards does not mean that [Hansel's] inclusion in the RIF was necessarily a pretext for age discrimination." *Paluck*, 221 F.3d at 1014. Because Prairie Industries's stated criteria for retaining employees did not focus on overall qualifications, and because Prairie Industries has not offered shifting or inconsistent accounts of the criteria it used, Hansel cannot rely solely on his qualifications to provide evidence of pretext.

Finally, according to Hansel, Prairie Industries's statement that Curran's wage was "easier to absorb" cannot be its actual reason for retaining Curran over him. He observes that Toberman, Polodna, and Christ all earned *more* than Hansel did, and that Paulus earned only 22 cents less per hour, but that the company nevertheless retained these employees. Dkt. 38, at 6. In response, Prairie Industries reiterates that it first removed the North Plant technicians from consideration for organizational reasons, then considered whether to retain Hansel or Toberman, and only *after* settling on Toberman did Stoeffler and Jazdzewski compare Hansel's

and Curran's wages and keep the lower-paid employee. Standing alone, Prairie Industries's decision to retain Curran in this situation would not be evidence of pretext because an employer does not necessarily violate the ADEA when it decides to save money by terminating employees who are paid more. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 612 (1993); *E.E.O.C. v. G-K-G, Inc.*, 39 F.3d 740, 746 (7th Cir. 1994) (terminating a higher paid employee "would be a lawful motive even though an employee's salary and fringe benefits tend to increase with his age").

Hansel again argues that Prairie Industries's explanation is a pretext because the company has advanced an inconsistent account of its decision-making. The company has repeatedly maintained that Stoeffler and Jazdzewski first narrowed the decision down to the technicians at the South Plant and then down to *only* Toberman and Hansel. *See* Dkt. 11, at 6 ("Jazdzewski decided to terminate one of the two employees performing lead duties—Hansel and Toberman."); Dkt. 37, at 16 ("Prairie has always maintained that the layoff decision was between Toberman and Hansel."); Dkt. 39, at 35 ("The record also establishes that although Jazdzewski and Stoeffler initially reviewed all eight maintenance technicians for layoff, the final decision was between Toberman and Hansel."). Now, on summary judgment, Prairie Industries suggests that after settling on Toberman, the managers then "considered whether it would make better business sense to retain Hansel or Curran." Dkt. 37, at 16. Prairie Industries's story appears to have changed, albeit very subtly. "Shifting and inconsistent explanations can provide a basis for a finding of pretext," and a jury could properly be skeptical about Prairie Industries's newfound argument regarding Curran's lower wage. *Schuster*, 327 F.3d at 577. Thus, Hansel has directed the court to an inconsistency in Prairie Industries's explanation, which can be an indicator of pretext.

Ultimately, however, this minor inconsistency is not enough. To survive summary judgment, Hansel must offer evidence from which a reasonable jury could conclude that Prairie

Industries terminated him because of his age. Even construing the evidence of record in the light most favorable to Hansel, there is simply too little to support a finding that Prairie Industries's reasons for retaining Curran were a pretext for discrimination. At most, Hansel has shown that Prairie Industries made statements in its briefs that altered the order in which it narrowed its list of employees for termination. This mild inconsistency is a far cry from the types of "shifting explanations" that can give rise to a finding of pretext. *See, e.g., Zaccagnini v. Charles Levy Circulating Co.*, 338 F.3d 672, 676-76 (7th Cir. 2003) (finding a shifting explanation when an employer first said that a terminated employee was not rehired because of company policy, but later argued that it was because the employee was not referred by the union); *cf. Runyon v. Applied Extrusion Techs., Inc.*, 619 F.3d 735, 740 (7th Cir. 2010) (finding no shifting explanation when an employer told an employee he was being fired because "he did not fit in," and later clarified that this was because the employee had three altercations which created a hostile workplace).

In this case, Prairie Industries has been substantially consistent in its explanation for why it retained Curran but not Hansel, and the minor inconsistency does not suggest a nefarious motive. The court has already explained why Prairie Industries's explanation that it focused on the South Plant employees for the January RIF was reasonable. Curran was, for most of his employment, a North Plant worker. If Prairie Industries considered Curran to be a North Plant worker, he was off the table immediately for that reason, and the decision came down to Hansel and Toberman. But if Curran was in the pool of South Plant technicians, and the decision did come down to a side-by-side choice between Hansel and Curran, Prairie Industries has been substantially consistent in explaining its reasons. Hansel is correct that he was not informed of the reasons for retaining Curran at Hansel's termination meeting. But Prairie Industries's decision not to go into details with Hansel at the termination meeting is understandable. In the

ERD case, Prairie Industries contended that it retained Curran rather than Hansel because Hansel was overqualified and that Hansel would not readily take direction from Toberman. Dkt. 26-16, at 3. All in all, Prairie Industries has offered a substantially consistent explanation: the managers kept Curran because he was a cheaper, junior-level maintenance technician who would take work as assigned.

Prairie Industries has offered a reasonable explanation for retaining Curran. No reasonable jury could infer, from a minor inconsistency in Prairie Industries's summary of how it decided to retain Curran rather than Hansel, that the company's true motive was age discrimination.

### c. Prairie Industries's statistical evidence

Prairie Industries submits statistical evidence tending to show that the impact of its two RIFs fell disproportionately to younger workers. Prairie Industries contends that this evidence undermines Hansel's claim of age discrimination. This evidence is suggestive of non-discrimination, but Prairie Industries has failed to show that it relates to similarly situated workers.

Statistical evidence of discrimination is commonly adduced by plaintiffs in "pattern or practice" discrimination cases and in disparate impact cases. But statistical evidence is usually less significant in individual discrimination cases because "[w]ithin the *McDonnell Douglas* individual disparate treatment model . . . statistical evidence is only one small part of a substantial web of evidence indicating pretext." *Bell v. E.P.A.*, 232 F.3d 546, 553 (7th Cir. 2000). In this case, Prairie Industries adduces numerical evidence concerning the two RIFs to show that Hansel could not proceed under the direct method of proof, *see* Dkt. 11, at 11-14,

and, in reply, it invokes the numerical evidence to discredit Hansel's claim of pretext, *see* Dkt. 37, at 19-21.

Prairie Industries presented tables showing employees laid off as part of the two RIFs in 2011-12. Dkt. 34-1. The company shows that it laid off 38 workers as part of the January RIF and that 17 of them (or about 45%) were under 40 years old. Limiting the statistics to the 22 employees who were involuntarily terminated during the January RIF, 13 (or about 59%) were under the age of 40. As of January 1, 2012, however, only 38% of the company's total workforce was under 40 years old. Thus, Prairie Industries asserts that younger workers experienced a proportionally larger share of the negative effects of the January RIF, both overall and in the set of involuntarily terminated workers. Hansel quibbled with some of the numbers, which Prairie Industries corrected, but he does not fundamentally dispute the data; he argues that it is irrelevant at this point in the case.

The usefulness of statistics in discrimination cases "depends on all of the surrounding facts and circumstances." *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977). As Hansel points out, this case is about individual discrimination, not the treatment of a class. *See Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587-88 (7th Cir. 2011) ("[T]he principal focus of the statute is the protection of the individual employee, rather than the protection of the minority group as a whole . . . the employer cannot satisfy its burden by identifying a person *within* the protected class who was not similarly discriminated against.") (original emphasis). As the *Diaz* court put it, "[t]here is no 'similarly situated employee' analysis available to the employer to defeat a plaintiff's claim," which would allow an employer to overcome an allegation of discrimination simply by showing that there was one member of the protected class that did not face discrimination. *Id.* at 588. But Prairie Industries is not attempting to defeat Hansel's claim with a single counterexample. Rather, Prairie Industries attempts to show a

comprehensive data set for the both RIFs that demonstrates that its layoff decisions were not biased against older workers.

Prairie Industries's numerical evidence shows that the layoffs fell disproportionately to workers under 40, which tends to show that Prairie Industries is not biased against workers 40 or older. But the issue in this case is whether Prairie Industries was biased against a worker who was 60, in favor of younger workers, some of whom are themselves older than 40. Prairie Industries does not present well-analyzed data concerning workers 60 and older, although the company makes some suggestive comments in this direction. Prairie Industries stated in its opening brief that it had 28 employees older than Hansel, and that only five of those were laid off. Dkt. 11, at 13. Prairie Industries cites no evidence for its claim about these five layoffs, but it appears that the number of workers laid off that were older than Hansel was actually six. Dkt. 34-1, at 1. Thus, it appears that about 21% of the workers older than Hansel were laid off. But raw numbers are not enough.

Hansel makes a good argument that these data combine workers that might not be similarly situated. Prairie Industries makes no effort to categorize the work of its older employees or to compare their duties to Hansel's. Based on the court's review of the list of Prairie Industries employees, *id.* at 2-7, it appears that many of the oldest workers were categorized as "general labor." It may be that Prairie Industries was happy to have 60-year-old workers in low-skilled jobs, but that it discriminated against them in positions of greater responsibility, such as a lead maintenance technician. Without some qualitative explanation demonstrating that these percentages apply to similarly situated workers, Prairie Industries's numerical evidence is not informative on the question of whether Hansel was the victim of age discrimination.

This is not to say that Prairie Industries's statistical evidence offers any affirmative support for Hansel's position. He has still failed to identify evidence of pretext. Ultimately, however, because Prairie Industries has not shown that its statistical evidence pertains to workers similarly situated to Hansel, the court has not relied on that evidence in deciding this motion.

## C. Conclusion

Hansel has made out a prima facie case of age discrimination, but Prairie Industries has offered legitimate, non-discriminatory reasons for its decision to retain other employees over him. Hansel has failed to adduce sufficient evidence of pretext. No reasonable jury could look at the evidence that Hansel *has* adduced—which at best includes an innocuous misstatement of the process through which the company made its termination decision—and conclude that his age was the real reason that Hansel was laid off. Prairie Industries is therefore entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. Defendant Prairie Industries, Inc.'s motion for summary judgment, Dkt. 10, is GRANTED.

2. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 22d day of October, 2014.

BY THE COURT:
/s/
JAMES D. PETERSON
District Judge